UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

O R D E R

In the Matter of the Extradition of
DARIUSZ SZEPIETOWSKI

M 08-971 (CLP)

--------------------------------------------------------X

On November 25, 2008, respondent Dariusz Szepietowski was provisionally arrested by

the United States Marshal for the Eastern District of New York, in Brooklyn, N.Y., based on an

arrest warrant issued by Judge Beata Wolosik of the Regional Court of Bialystok, Poland on May

30, 2003. The request for provisional arrest and extradition, dated July 11, 2006, charges

Szepietowski with: 1) fraudulently obtaining false motor vehicle certifications, in violation of

Articles 272, 273 and 12 of the Criminal Code of Poland; and 2) bribery, in violation of Articles

229 and 12 of the Criminal Code of Poland.

Following his arrest, Szepietowski was arraigned before this Court on November 25,

2008, and on November 26, 2008, the respondent appeared for a detention hearing before the

Honorable Lois Bloom, at which time a permanent order of detention was entered pending

extradition. On December 3, 2008, a status conference was held before this Court and

extradition papers submitted by the Polish Ministry of Justice to the U.S. Department of Justice,

Office of International Affairs, were provided to opposing counsel and to the Court.[1] Among

other things, the Extradition Request contained the copy of the extradition treaty between the

United States and Poland (the "Treaty"); the Declaration of Kenneth R. Propp, Attorney-Advisor

---

[1] On that same date, retained counsel appeared for respondent Szepietowski and the
attorney previously appointed by the Court was relieved from further representing respondent in
this matter.

for the Department of State; a diplomatic note from the Embassy of Poland; the certification of the United States Consul General at Warsaw, Poland; and Polish and English translations of several documents from the Polish government, including the request for provisional arrest and extradition, the decision of the Polish Regional Court dated May 30, 2003, an excerpt from the Criminal Code of Poland, and summaries of interviews with several witnesses.

Given that respondent's counsel was not at that time prepared to address the issues relating to extraditability, this Court scheduled a hearing on December 19, 2008 to determine whether the evidence of criminality presented by Poland was sufficient to sustain the charges under the Treaty. See 18 U.S.C. § 3184. An hour prior to the hearing, the Court received a letter from counsel for Szepietowski, raising a number of challenges to the extradition. First, he challenged the sufficiency of the petition from Poland insofar as it failed to contain the declaration that the crimes with which Szepietowski is being charged in Poland are also punishable in the United States by a sentence of more than one year. The letter also challenged the sufficiency of the Polish government's presentation of the information regarding the prior proceedings in the case, leaving it unclear as to when the proceedings were commenced, the extent of the prosecution, the number of people charged, and whether these individuals were indicted and convicted. The letter further argued that certain elements of the charged offenses in Poland were not defined in the Statement of Law, and there were no citations to the Traffic Law Act regulating the duty of motor vehicle inspectors or the nature of the documents issued by the inspectors and government officials in this case.

The letter also argued that the accusations against the respondent were insufficient under Polish law to establish "reasonable cause" as required by the Treaty. Among other things,

respondent complained that there were no allegations as to any specific acts he allegedly committed in connection with the motor vehicle certifications, nor is there any evidence from the witnesses' statements that directly ties the individual before the Court with the crimes charged. The letter noted that although the witnesses provided a physical description of the individual involved, they did not identify the respondent by name and there was no evidence that they ever identified the respondent in any way. The letter asserted that "[i]n sum, the cumulative testimony does not indicate that any crime has been committed, nor that respondent committed any crime." (Letter of Michael Musa-Obregon, Esq., dated Dec. 19, 2008 ("Resp.'s Ltr."), at 2). In essence, Szepietowski argued that the documents submitted by the government of Poland were insufficient to sustain the government's burden under the Treaty in that the documents failed to demonstrate probable cause to believe that the individual before the Court, Dariusz Szepietowski, committed an offense for which extradition may be sought.

Based upon the late submission by respondent, this Court adjourned the hearing for a period of time to allow the government to submit a reply to respondent's papers and to consider whether to request additional time to allow the government of Poland to submit supplemental supporting documentation. By letter dated December 22, 2008, the government submitted a letter in response to respondent's arguments, contending that the Treaty does not require the Polish government to certify that the crimes charged are punishable in the United States by more than one year or that there is any requirement that the extradition materials provide any more information regarding the "procedural history" of the case beyond that which had already been provided. The government further argued that the terms used in the Polish Code sections at issue were adequately defined and that the witness statements included in the extradition package were

3

sufficient both to establish probable cause that a crime had been committed and that the individual before the Court had committed the crimes.

On December 30, 2008, a hearing was held before this Court at which time counsel for Szepietowski elaborated on a number of arguments and raised several additional concerns about the sufficiency of the evidence. Among other things, counsel pointed out certain alleged inconsistencies in the witnesses' statements, noting, for example, that several denied any culpability while at the same time asserting wrongdoing on the part of the respondent, and that one denied taking any money in exchange for issuing the vehicle inspection certificates, thus negating at least one element of the bribery charge. Counsel also alleged that the practice of giving and receiving small amounts of money, such as was involved here,[2] is common in Poland when people are attempting to expedite services. He further noted that none of the three vehicle inspectors identified Mr. Szepietowski by name and only one provided a very brief physical description of a Polish man about 40 years old, with dark hair, approximately 180 centimeters in height. According to respondent, over 50 people work at the firm with which the individual identified by the witnesses was associated, and there is no way to ascertain whether the person described is the respondent or some other employee.

Having reviewed the supporting witness statements, the Court agreed with respondent that the evidence identifying Dariusz Szepietowski as the individual who met with the inspectors and paid them money to obtain the vehicle inspection certificates was insufficient to establish identity. The Court also found that although the Provisional Arrest Warrant listed thirty different

---

[2]According to the Provisional Arrest Warrant, the amounts paid were generally 50 to 100 PLN per vehicle, which at the then current exchange rate amounted to approximately $14 to $28 in U.S. currency. (Tr. at 18, December 30, 2008).

vehicles by make and model number, certificate number and date, the evidence submitted failed

to link the respondent with any specific false certification or vehicle as charged. Accordingly,

the Court gave the government an additional two weeks to supplement its supporting papers.[3]

The Court also denied respondent's request for bail in the interim on the grounds that respondent

had failed to demonstrate the existence of "special circumstances" justifying an exception to the

presumption that bail is unavailable in the context of an extradition request. See, e.g., United

States v. Leitner, 784 F.2d 159 (2d Cir. 1986); In re Extradition of Sacirbegovic, 280 F. Supp. 2d

81 (S.D.N.Y. 2003), modified, No. 03CR.MISC.01PAGE19, 2004 WL 1490219 (S.D.N.Y. July

6, 2004).

On January 21, 2009, the government submitted additional information in support of the

---

[3]Article 13 of the Treaty, which is entitled "Additional Information," provides in relevant part, that "[i]f the Requested State considers that the information furnished in support of a request for extradition is not sufficient to fulfill the requirements of the Treaty, that State may request that additional information be furnished within such a reasonable length of time as it specifies." Courts examining similar provisions in other treaties have granted the requesting state additional time to supplement the extradition request. See, e.g., LoDuca v. United States, No. 95 CV 713 (DGT), 1995 WL 428636, at *9-11 (E.D.N.Y. July 7, 1995) (construing Article XI of the Extradition Treaty with the Government of the Republic of Italy to permit the submission of additional documentation in support of the extradition request beyond the 45 day period in which the original extradition request must be received under the Treaty); Matter of Extradition of Mainero, 990 F. Supp. 1208, 1215 (S.D. Cal. 1997) (rejecting the defendant's challenge to sufficiency of the evidence based on the "late filing" of documents contained in a supplemental filing, holding that the filing was "not inconsistent with the Treaty or its provisions"). Thus, in considering the government's request for additional time, this Court finds that Article 13, allowing for supplementation of the record, was designed to deal with the very circumstances that are present in this case where the respondent challenges the sufficiency of the evidence presented to support the finding of probable cause. In reaching this conclusion, this Court is mindful of the Supreme Court's admonition that international agreements such as this Treaty should "be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them." Factor v. Laubenheimer, 290 U.S. 276, 293 (1993); see also Valentine v. United States, 299 U.S. 5, 10 (1936).

Polish government's extradition request, including a summary of additional witness testimony tying Szepietowski to the vehicle certifications which was provided by the Deputy District Public Prosecutor of Bialystock, Poland. (Letter from Asst. U.S. Atty. Daniel S. Silver with enclosures, dated January 21, 2009 ("Govt.'s Ltr.")). Respondent continues to challenge the sufficiency of the evidence as to both probable cause to believe that a crime has been committed, as well as probable cause as to the issue of identity.

Having considered the evidence and arguments of both the government and the respondent, the Court finds that there is probable cause to believe that Szepietowski has violated Articles 272, 273, and 12 of the Criminal Code of Poland and grants the government's petition for a certificate of extradition.

## DISCUSSION

A. The Requirements for Extradition

Section 3184 of Title 18, United States Code provides:

> Whenever there is a treaty or convention for
> extradition between the United States and any
> foreign government, . . . any justice or judge of the
> United States, or any magistrate authorized so to do
> by a court of the United States, or any judge of a
> court of record of general jurisdiction of any State,
> may, upon complaint made under oath, charging any
> person found within his jurisdiction, with having
> committed within the jurisdiction of any such
> foreign government any of the crimes provided for
> by such treaty or convention, . . . issue his warrant
> for the apprehension of the person so charged, that
> he may be brought before such justice, judge or
> magistrate, to the end that the evidence of
> criminality may be heard and considered. . . . If, on

> such hearing, he deems the evidence sufficient to
> sustain the charge under the provisions of the proper
> treaty or convention, . . . he shall certify the same,
> together with a copy of all the testimony taken
> before him, to the Secretary of State, that a warrant
> may issue upon the requisition of the proper
> authorities of such foreign government, for the
> surrender of such person, according to the
> stipulations of the treaty or convention.

Thus, in order to issue a certificate of extraditability, the examining judicial officer[4] is required to

hold a hearing to determine if the person before the court is subject to surrender under the terms

of the treaty at issue and the relevant law. See In re Extradition of Hon-Ming, No. 06 M-0296,

2006 U.S. Dist. LEXIS 88326, at *8-9 (E.D.N.Y. Dec. 6, 2006). The court must determine if: 1)

there is a valid extradition treaty between the requesting country and the United States; 2) there

are criminal charges pending in the requesting state against the extraditee and the required

documentation has been submitted to the Court; 3) the charges are extraditable offenses under the

Treaty and dual criminality has been established; 4) the individual before the court is actually the

person sought by the authorities of the foreign state; and 5) there is probable cause to believe that

a crime was committed by the person before the court based on competent legal evidence

presented to the court. See In re Extradition of Hon-Ming, 2006 U.S. Dist. LEXIS 88326, at *11;

In re Extradition of Waters, No. 03 M 1072, 2003 U.S. Dist. LEXIS 24399, at *2 (E.D.N.Y. Nov.

24, 2003); United States v. Barr, 619 F. Supp. 1068, 1070 (E.D. Pa. 1985). In addition, the court

must certify that it has jurisdiction over the fugitive and that the judicial officer is authorized to

---

[4]Magistrate Judges are authorized to act as judicial officers under 18 U.S.C. § 3184. See
Lo Duca v. United States, 93 F.3d 1100, 1109 (2d Cir. 1996); In re Extradition of Hon-Ming, No.
06 M-0296, 2006 U.S. Dist. LEXIS 88326, *10 (E.D.N.Y. Dec. 6, 2006).

conduct extradition proceedings. See Ornelas v. Ruiz, 161 U.S. 502, 508-09 (1896); see also Bingham v. Bradley, 241 U.S. 511, 516-17 (1916); McNamara v. Henkel, 226 U.S. 520, 523 (1913).

In conducting its inquiry in an extradition proceeding, the Court "does not determine the ultimate guilt or innocence of the individual whose extradition is sought." In re Extradition of Hon-Ming, 2006 U.S. Dist. LEXIS 88326, * 9; see also United States v. Pena-Bencosme, No. 05-M-1518, 2006 U.S. Dist. LEXIS 82579, at *6-7 (E.D.N.Y. Nov. 13, 2006). The inquiry is a "narrow" one and an extraditee's right to challenge the evidence is limited to explaining but not contradicting the proof presented by the foreign state. See Shapiro v. Ferrandina, 478 F.2d 894, 901 (2d Cir. 1973); United States v. Pena-Bencosme, 2006 U.S. Dist. LEXIS 82579, at *9-10. Thus, in challenging an extradition request, the respondent may not present evidence to impeach the witnesses' statements, see Germany v. United States, No. 06-1201, 2002 U.S. Dist. LEXIS 65676, at *25-26 (E.D.N.Y. Sept. 5, 2007); to establish an alibi, see Abu Eain v. Adams, 529 F. Supp. 685 (N.D. Ill. 1980); or to raise a defense of insanity. See Charlton v. Kelly, 229 U.S. 447, 449 (1913).


B. Jurisdiction

In this case, the Court certifies that it has personal jurisdiction over Szepietowski based upon his arrest in the Eastern District of New York and his presence before this Court. See In re Pazienza, 619 F. Supp. 611, 616 (S.D.N.Y. 1985). Similarly, there is no dispute that this Court is authorized to hear this extradition proceeding. See Joint S.D.N.Y./E.D.N.Y. Local Criminal Rule 58.1(b) (providing that "Magistrate judges are . . . authorized to exercise the jurisdiction set

forth in 18 U.S.C. § 3184"); In re Extradition of Hon-Ming, 2006 U.S. Dist. LEXIS 88326, *10.

There is also no dispute that the Treaty is in full force, as attested to by Kenneth Propp

from the Office of the Legal Adviser of the Department of State (Declaration of Kenneth Propp,

dated Mar. 15, 2007), see Galanis v. Pallanck, 568 F.2d 234, 239 (2d Cir. 1977) (noting that the

Department of State's view on this issue is entitled to respect), and that the documents received

from Poland have been properly authenticated under 18 U.S.C. § 1390, having been certified by

Lisa A. Piascki, Consul General of the United States, in Warsaw, Poland. The certificate

establishes that the documents would be admissible in the Polish courts for similar purposes. See

In re Extradition of Hon-Ming, 2006 U.S. Dist. LEXIS 88326, * 24 (holding that the certificate

of the consular officer "is conclusive on the propriety and legality of the underlying

authentications").

Moreover, although the crimes charged here are alleged to have occurred between

February 1998 and February 1999, the applicable statutes of limitations set forth in the Criminal

Code of Poland are five to 15 years, see Criminal Code of Poland, Article 101, at 18, and the

initiation of criminal proceedings tolls the statute of limitations by a period of five to ten years

depending on the seriousness of the crimes charged. See Criminal Code of Poland, Article 102,

at 18.


C. Applicability of Treaty

The crimes charged in the warrant are offenses covered by the Treaty, giving rise to an

extradition obligation. Specifically, Article 2, paragraph 1 of the Treaty defines an extraditable

offense as one "punishable under the law in both Contracting States by deprivation of liberty for

9

a maximum period of more than one year, or by a more severe penalty." Treaty, Art. 2, ¶ 1. The Treaty definition of extraditable offenses conforms with the requirement of "dual criminality" when extradition is sought by a foreign government. See In re Extradition of Hon-Ming, 2006 U.S. Dist. LEXIS 88326, * 13; Spatola v. United States, 741 F. Supp. 362, 371 (E.D.N.Y. 1990), aff'd, 925 F.2d 615 (2d Cir. 1991). This use of a dual criminality clause eliminates the need for a specific list of extraditable offenses and "obviates the need to renegotiate or supplement the Treaty as additional offenses became punishable under the laws of both Contracting States." (Letter of Submittal to The President, dated June 13, 1997 at (v)).

Here, Szepietowski is charged with bribing public officials, specifically vehicle inspection technicians, in order to obtain fraudulent motor vehicle registrations. (See Request for Provisional Arrest at 2-3). According to the Request for provisional arrest and extradition, dated July 11, 2006, the respondent Szepietowski, "acting jointly and in conspiracy with" Bozena Szepietowska, allegedly obtained 30 registration certificates from a public official confirming the requalification of passenger cars to universal commercial vehicles, through the submission of certificates of effected technical inspections, descriptions of alterations made in vehicles, and expert opinions, knowing that they certified untruths as to the fact of inspection and alteration. The respondent is further charged with according property benefits to diagnostic technicians employed at the TECAR Vehicle Control Station in the total amount of at least PLN 2,900 in return for the technicians' desisting from their duties to inspect the vehicles and issuing false certificates of inspection and alterations in the vehicles.

More specifically, it is alleged that Przedsiebiorstwo Produkcyjno-Handlowe "Roberts" Limited Liability Company ("Roberts Co." or the "Roberts firm") purchased over 101 passenger

10

cars of various makes during the period February 12, 1998 through December 7, 1999. It is alleged that the Roberts Co. entered into an agreement with respondent Szepietowski whereby the vehicles, which were originally registered with the City Office in Bialystok as passenger cars, would be converted to specialized commercial use in accordance with certain technical specifications. Among other things, the alterations required to convert the vehicles included reducing the number of seats in the cars, separating baggage space from the passenger section through the use of a wire mesh divider, and securing the windows in accordance with certain requirements.

According to the charges, the Roberts Co. obtained certain documentation from three diagnostic technicians employed by the Przedsiebiorstuvo Transportowe TECAR Limited Liability Company Vehicle Control Station in Bialystok – Tomasz Gasowski, Zbigniew Tomasz Supron, and Gregorz Kropiewnicki – certifying that they had conducted technical inspections of the vehicles and that appropriate alterations had been made. After receiving the necessary certifications, the Roberts Co. sold the vehicles to Ofion, a limited liability company in Kielce. It was subsequently determined that a number of the vehicles did not contain the alterations listed in the documentation certified by the technicians. Based on statements obtained from the three technicians and Bozena Szepietowska, respondent's ex-wife and a shareholder in the Roberts Co., it is alleged that the respondent paid the technicians PLN 50 in return for the issuance of each certificate, knowing that the vehicles had not been inspected and did not contain the necessary modifications to turn them into commercial vehicles.

These charges of fraudulently obtaining false motor vehicle registrations constitute violations of Articles 272 and 273 of the Criminal Code of Poland, and bribery of a public

official violates Article 229 of the Criminal Code. Bribery and fraud are clearly crimes both here in the United States and under the Polish Penal Code. In Poland, these crimes are punishable by potential terms of imprisonment of three years for fraudulently obtaining false motor vehicle registrations and ten years for the bribery charge. (See Criminal Code of Poland Arts. 229, 272).

Under federal law here in the United States, giving anything of value to a public official to influence that official in the performance of his duties is a crime punishable by a term of up to 15 years in prison. 18 U.S.C. § 201(b). Similarly, 18 U.S.C. § 1341 prohibits a person from devising "any scheme or artifice to defraud, or [to] obtain money or property by means of false or fraudulent pretenses," a crime punishable by a term of up to 20 years in prison. Both crimes are also punishable under New York State law. See N.Y. Penal Law § 200.00 (defining bribery as conferring a benefit on a "public servant" to influence his actions thereby and imposing a term of up to seven years); N.Y. Penal Law §§ 170.25, 170.10(3) (prohibiting possession of a forged instrument with intent to defraud when officially issued by a public servant); N.Y. Penal Law § 175.35 (prohibiting the filing of any false document with the state or with any government office with the intent to defraud).

The respondent argues that the government has failed to specify adequately which statutes here in the United States are the equivalent of the Polish Code sections alleged to have been violated. (Tr. at 19-20, December 30, 2008). Specifically, respondent contends that the federal mail fraud statute is inapposite because there is no allegation that any mailing occurred in this case. (Id.) Similarly, respondent argues that section 175.35 of the New York Penal Law is inapplicable because there is no allegation that any false documents were filed with the Polish government or any state agency. (See id.). However, as the Supreme Court noted in Collins v.

12

Loisel:

> The law does not require that the name by which the crime is
> described in the two countries shall be the same; nor that the scope
> of liability shall be coextensive, or, in other respects, the same in
> the two countries. It is enough if the particular act charged is
> criminal in both jurisdictions.

Collins v. Loisel, 259 U.S. 309, 312 (1922) (emphasis added); see also Messina v. United States,

728 F.2d 77, 79 (2d Cir. 1984). Thus, in determining whether a fugitive's conduct constitutes a

crime under United States law in a dual criminality analysis, the Court looks to the nature of the

criminal act charged – in this instance, fraud through the certification of false documents – not

the specific elements of the statute. Clearly, fraud is a crime in both the United States and

Poland.

With respect to the bribery charges, the respondent asserts that certain terms contained in

the Polish Code, including "public officer" and "document," have not been adequately defined.

(Resp.'s Ltr. at 1). However, as the government points out, Article 272 of the Polish Code under

which respondent is charged, is drafted in the disjunctive, prohibiting "deceitful misleading of a

public officer or another person authorized to issue the document. . . ." Thus, whether the Polish

vehicle inspectors are considered "public officers" or not, they are clearly authorized to "issue"

the inspection certificates, and therefore bribery of such an individual constitutes a crime under

Polish and United States law, regardless of the definition of "public officer."[5]

Respondent has raised an additional challenge to the charges. He asserts that it is

customary in Poland to pay officials to expedite the performance of their duties and that in this

---

[5]To the extent that respondent challenges the government's failure to define "documents,"
the Court agrees with the government that the term is commonly understood and no further
definition is necessary.

instance, since the amounts paid to the inspectors ranged from the equivalent of from $14 to $28 in United States currency, the actions complained of were not a crime. Respondent further points out that in the statements provided by the witnesses, they noted that the vehicles presented for inspection were brand new and therefore there was no fraud committed. To the extent that respondent is raising a defense to the charges based on custom and practice to negate intent to commit a crime or he is alleging a defense of selective prosecution, these are issues to be raised before the Polish courts and are not properly considered by this Court in determining the limited question of extraditability. See Lo Duca v. United States, 93 F.3d at 1104 (noting that an extradition hearing "'is not . . . in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him,'" but "'essentially a preliminary examination'") (quoting Benson v. McMahon, 127 U.S. 457, 463 (1888), and Ward v. Rutherford, 921 F.2d 286, 287 (D.C. Cir.1990)); see also Ahmad v. Wigen, 910 F.2d 1063, 1067 (2d Cir. 1990) (describing as improper a district court's inquiry into fairness of foreign country's laws during habeas review of an extradition proceeding); In re Matter of Sindona, 450 F. Supp. 672, 694 (S.D.N.Y. 1978) (discussing doctrine of noninquiry into fairness of foreign judicial procedures during extradition proceedings), aff'd in related proceeding, Sindona v. Grant, 619 F.2d 167 (2d Cir. 1980); In re Extradition of Singh, 123 F.R.D. 127, 129-37 (D.N.J. 1987) (same).

Having considered the respondent's arguments, the Court concludes that because the crimes charged comport with the type of offenses covered by the Treaty, extradition is required if the other prongs of the test are satisfied.

14

D. Probable Cause

In this case, there is a challenge to the sufficiency of the evidence submitted to support the Polish government's burden of establishing probable cause to believe that Szepietowski committed the alleged criminal violations. It is well-established that extradition hearings are in the nature of a probable cause or preliminary hearing, where the judicial officer does not inquire into the ultimate guilt or innocence of the fugitive, but rather determines whether the foreign country has presented sufficient competent legal evidence to support a finding of probable cause to believe that the fugitive is guilty. See Collins v. Loisel, 259 U.S. at 316; Shapiro v. Ferrandina, 478 F.2d 894, 905 (2d Cir. 1973); Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969) (and cases cited therein), cert. denied, 398 U.S. 903 (1970); In re Ryan, 360 F. Supp. 270, 273 (E.D.N.Y.), aff'd, 478 F.2d 1397 (2d Cir. 1973). "Courts have long understood that the hearing before the extradition magistrate does not determine the guilt or innocence of the accused but rather represents a judgment whether there is competent evidence that would support a reasonable belief that the subject of the proceedings was guilty of the crimes charged." Gill v. Imundi, 747 F. Supp. 1028, 1038 (S.D.N.Y. 1990) (citing cases).

Probable cause has been defined as the level of evidence "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." In re Extradition of Atta, 706 F. Supp. 1032, 1050 (E.D.N.Y. 1989) (citations omitted); accord Maguna - Celaya v. Haro, 19 F. Supp. 2d 1337, 1342 (S.D. Fla. 1998) (quoting In re Extradition of Conteras, 800 F. Supp 1462, 1464 (S.D. Tex. 1992)). While hearsay statements are admissible and competent evidence in making a probable cause determination for extradition purposes, see, e.g., Emami v. U.S. Dist. Court for the N.D. of Calif., 834 F.2d 1444, 1450-51

15

(9th Cir. 1987), mere "'[c]onclusory statements do not satisfy the probable cause standard.'" United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999) (quoting In re Lehming, 951 F. Supp. 505, 517 (D. Del. 1996)); accord In re Fulgencio Garcia, 188 F. Supp. 2d 921, 932 (N.D. Ill. 2002) (noting that "where charges amount to mere conclusory allegations unsupported by substantive evidence, extradition will be denied"). Only where there has been a conviction and an adjudication of guilt is there no need to make an independent determination of probable cause, and in that case, the magistrate judge may rely on certified copies of a judgment of conviction or appellate court opinion. See, e.g., Spatola v. United States, 741 F. Supp. 362, 373 (E.D.N.Y. 1990). Otherwise, the magistrate judge is required "to exercise . . . independent judgment . . . to determine the propriety of an individual's extradition," Ahmad v. Wigen, 726 F. Supp. 389, 412 (E.D.N.Y. 1989), and "may conclude, on a review of the affidavits submitted, that there are insufficient indicia of reliability or credibility to establish probable cause." In re Extradition of Singh, 124 F.R.D. 571, 577 (D.N.J. 1987). As M. Cherif Bassiouni noted in his commentary, International Extradition: United States Law & Practice, at 713 (3d ed. 1996):

> [P]robable cause means that sufficient evidence has been presented
> to the satisfaction of the court to warrant bringing the relator to
> trial in accordance with the laws of the requesting state, not simply
> that he is suspected of criminality with no basis in fact to support
> it. If indeed no evidence of probable cause exists, then the
> assertions presented by the requested state constitute nothing more
> than mere suspicion and the request must be denied.

In this case, the Polish government produced certified copies of: 1) the request for provisional detention and extradition, dated July 11, 2006, listing the make, registration number, name of inspector, certificate number, and date of certificate for each vehicle for which a false certificate was allegedly obtained; 2) the decision to present charges issued by the Regional

Court in Bialystok, Poland, dated July 8, 2003;[6] and 3) a copy of the arrest warrant issued by the

District Prosecutor's Office in Bialystok, Poland, authorizing Szepietowski's arrest. Also

included in the initial package presented by the Polish government were records of interviews of

Bozen Szepietowska and the three inspectors from whom Szepietowski allegedly obtained

certificates detailing and explaining their involvement and that of the respondent.

According to Bozena Szepietowska, respondent's former wife and president of Roberts

Co., the respondent, owner of the firm Mega, contracted with the Roberts firm to oversee the

conversion of passenger vehicles to commercial vehicles and to obtain the necessary

certifications. For these services, respondent was to receive "PLN 1000 plus VAT." The witness

states that respondent submitted registrations for altered vehicles and invoices to the Roberts Co.

accounting department. Ms. Szepietowska, however, denied knowing how the alterations of the

vehicles were handled, although she stated that she thought it was done by the respondent.

Grzegorz Kropiewnicki, facing charges in connection with the alleged crime, initially

declined to plead guilty and at first denied that he issued vehicle certifications without inspection.

He subsequently pleaded guilty, denied knowing respondent Szepietowski, but admitted that he

knew, as a customer, a "black-haired man" who was a representative of the Roberts Co. and

presented the witness with documents on which the witness issued a certificate and a description

of alterations to the car without inspection. The witness did not recall what documents were

presented to him and he denied receiving any money in return. He explained that "[b]ecause the

---

[6]Also included in the package received from the Polish government is a copy of the corrected decision of the Regional Court dated May 2, 2005, correcting a typographical error in the period of the offenses from February 12, 1998 to February 4, 1998 to the correct dates of February 12, 1998 to February 4, 1999.

vehicles were brand new, I considered them technically sound and desisted from inspection. I also had in mind the good of the firm, it needed high turnover."

The second technician to provide a witness statement, Tomasz Zbiginew Supron, pleaded guilty to charges in connection with the matter and indicated that during his shift, a man from the Roberts firm, "aged about 40, dark hair, about 180 centimeters tall, dark complexion, always suntanned," would bring "a decision from the Department of Motor Vehicles" and an expert opinion concerning alterations to a vehicle. On the first occasion, the manager Kropiewnicki gave him the papers and "said the matter had to be settled and the cars were sure." According to the witness, he did not remember if the cars were inspected. On average, the man would pay PLN 50 to the technician who issued the certificate. The witness claimed that he did not know that there was anything wrong because the man presented a decision and expert opinion. He later "figured it was all a scheme to deduct VAT."

The third technician, Tomasz Gasowski, pleaded guilty, admitting that he did not inspect all of the vehicles from Roberts Co. He stated that a man, whom he did not know but could recognize, came from the Roberts firm requesting that the witness issue certificates based on expert opinions, without conducting inspections. The witness admitted having done so and indicated that he knew Grzegorz Kropiewnicki also issued such certificates. He stated that sometimes he received payment of approximately PLN 100 per vehicle. The man he described would pass him the money and there would be an invoice. The witness indicated that he was influenced by the fact that the "vehicles were brand new and carried expert opinions, there was practically nothing to inspect in them."

In addition to these witness statements, the Polish government provided a supplemental

submission, summarizing additional witness statements from a number of employees of the Roberts firm. Among these statements was the statement of Zbigniew Maluszycki, a driver and escort for the Roberts Co., who explained that he had gone to the expert Mr. Wojcik to collect the necessary documents. In collecting the documents which had been prepared before his arrival, he was instructed to say that he had been sent by the respondent Szepietowski. He then gave the documents either directly to Szepietowski or to the other women employed in Szepietowski's office. The expert, Janusz Wojciech Wojcik, who was questioned as a suspect in the investigation, confirmed that respondent Szepietowski had contacted him on behalf of the Roberts firm.

Elzbieta Beata Konieczna-Stankiewicz, chief accountant for the Roberts Co., stated that Szepietowski had personally dealt with the reclassification of motor cars to trucks and that there was an agreement entered into between Szepietowski and the Roberts firm assigning him that responsibility. She also stated that on a monthly basis, Szepietowski issued a VAT invoice for the modifications. Finally, Agnieszka Danuta Sumkowska, another Roberts' employee stated that while looking through invoices for July or August 1998, she had seen reports proving the reclassification of cars into trucks by the respondent.

Having reviewed the additional information provided by the Polish government, this Court finds that there is clearly probable case to believe that an individual associated with the Roberts firm committed the various offenses alleged in the provisional arrest warrant, including: 1) fraudulently obtaining false motor vehicle certifications and 2) bribery of the officials charged with issuing such certifications.

Since this Court has found that the Treaty is in full force, that this Court has the authority

to conduct extradition proceedings and has personal jurisdiction over Szepietowkski, and that the crimes charged in the warrant are offenses covered by the Treaty, the only remaining issue is whether the individual before the Court is the same person who is alleged to have committed the crimes charged. See Bingham v. Bradley, 241 U.S. 511, 516-17 (1916); Ornelas v. Ruiz, 161 U.S. 502, 508-09 (1896); see also In re Extradition of Ernst, No. 97 Crim. Misc. 1, 1998 WL 395267, at *4-5 (S.D.N.Y. July 14, 1998); United States v. Barr, 619 F. Supp. 1068, 1070 (E.D. Pa. 1985).

### E. Identity

The evidence before this Court clearly establishes that the individual before the Court is the Dariusz Szepietowski who was described in the request sent to law enforcement by the government of Poland. Not only does the photograph of the extraditee received from Polish authorities, which was provided to the Court, appear to depict the same individual currently before the Court, but the date of birth of the extraditee, September 28, 1960, also appears consistent with the age of the individual, Darisuz Szepietowski, who was arrested on November 25, 2008.

Szepietowski argues, however, that there is insufficient information to conclusively tie the individual before this Court with the individual described in the extradition papers. He argues that the statements of the three technicians do not identify him as the individual who obtained the fraudulently issued certifications in exchange for cash. (Resp.'s Ltr. at 1-2). The government counters that the statement of Szepietowski's former wife establishes that Szepietowski was engaged by the Roberts firm to obtain vehicle certifications, and that in

conjunction with the technicians' statements, her statement provides probable cause to believe that Szepietowski illegally obtained the certifications. (Government's Memorandum of Law in Support of Extradition, submitted December 15, 2008, at 11-13).

The Court shared respondent's view that the witness statements initially provided by the Polish government were insufficient to establish that respondent was the individual who obtained the certifications from the technicians. However, the government's additional submission provides clear evidence of the identity of the individual who obtained the certifications. The submission includes summaries of additional witness statements which make clear that respondent Szepietowski was personally responsible for arranging for the reclassification and involved in the bribery scheme. Specifically,

- Zbigniew Maluszycki, a Roberts Co. employee, stated that as part of the vehicle reclassifications, he was responsible for obtaining documents from an expert and delivering them to Szepietowski;

- Agnieszka Danuta Sumkowska, a Roberts Co. employee, stated that she had seen reports regarding reclassification of vehicles by Szepietowski;

- Elzbieta Beata Konieczna-Stankiewicz, chief accountant for Roberts Co., stated that Szepietowski had signed an agreement with Roberts Co. under which he personally dealt with the vehicle reclassifications, and that Szepietowski submitted monthly invoices for the reclassifications; and

- The expert, Wojcik, whose opinions were the basis on which the technicians issued their false certifications, confirmed that it was the respondent Szepietowski who had contacted him.

21

(Govt.'s Ltr. at 3-4). In addition, the letter from the Polish government notes that there are no documents in the evidence gathered relating to this matter that suggest Szepietowski acted jointly with any other individuals in carrying out the reclassifications. (Id. at 4).

Respondent objects to the form of the government's additional submission, contending that it constitutes mere argument and not evidence. However, the submission contains summaries of witness statements, which do constitute evidence – albeit hearsay evidence – and may therefore be considered by this Court. See In re Extradition of Hon-Ming, 2006 U.S. Dist. LEXIS 88326, at *27 (noting that "[i]t is well established that hearsay evidence, including multiple hearsay and the unsworn statements of absent witnesses, is admissible at extradition hearings and may support a finding of extraditability").

Respondent contends that even with the government's additional submission, there is not enough evidence to establish probable cause that respondent committed the crimes alleged. Specifically, respondent emphasizes that none of the witnesses whose statements are cited by the government state that the witness received money from respondent in exchange for vehicle certifications. However, when considered together, the witness statements do depict a clear link between the illegally obtained certifications and the respondent: (1) Szepietowski's ex-wife, who was president of Roberts Co., stated that respondent contracted with Roberts Co. to carry out the company's vehicle reclassifications, and Roberts Co.'s chief accountant confirmed that respondent had personally dealt with the reclassifications; (2) the expert Wojcik stated that respondent contacted him regarding expert opinions; (3) a Roberts Co. employee stated that he was responsible for collecting documents from Wojcik and delivering them to respondent; (4) three technicians from a vehicle inspection station operated by the Polish government stated that

they were provided with expert opinions by an individual acting in the name of the Roberts Co. and were induced to issue vehicle certifications without conducting inspections based on these expert opinions; (5) two of the technicians stated that they issued the vehicle certifications in exchange for a monetary payment provided by the Roberts Co. representative; (6) the three technicians provided descriptions of the Roberts Co. representative consistent with the appearance of respondent; and (7) Szepietowski's ex-wife and the Roberts Co. chief accountant state that respondent submitted invoices to Roberts Co. for payment in return for the reclassification of the vehicles.

Although the evidence provided does not attempt to describe all of Szepietowski's actions in obtaining the vehicle reclassifications, the government need only establish a "reasonable belief" of Szepietowski's guilt. See In re Extradition of Atta, 706 F. Supp. at 1050. In light of the substantial evidence of Szepietowski's role in the vehicle reclassifications on behalf of Roberts Co. and the clear evidence linking respondent to the illegally obtained vehicle certificates, the Court concludes that the government has met its burden.

Accordingly, having examined the totality of the information before this Court, I find that the individual before the Court is the Darisuz Szepietowski sought by Polish authorities for the crimes detailed in the extradition papers.


CONCLUSION

Having considered the totality of the evidence before this Court, I find that there is sufficient evidence to believe that the individual before the Court, Darisuz Szepietowski, is the individual sought by Polish authorities to answer the charges detailed in the extradition request;

and that there is probable cause to believe that Szepietowski committed the crimes as detailed in the papers.

Based on the foregoing, the government's petition for a certificate of extraditability for Darisuz Szepietowski is GRANTED, and the Court hereby certifies this matter to the Secretary of State for surrender of respondent to Polish authorities in accordance with the Treaty.

SO ORDERED.

Dated: Brooklyn, New York
January 23, 2009

Cheryl L. Pollak
United States Magistrate Judge